IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN BARROW, IV and KIMBERLEE BARROW, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>TEMPER FABRICATORS, LLC, )<br>)<br>Defendant. ) | Case No. 13-CV-563 -NJR-PMF |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is Plaintiffs' "Request for Relief Pursuant to Rule 56(f) Regarding Defendant's Waiver of All Immunity Under the Illinois Workers' Compensation Statute" (Doc. 70). Plaintiffs request this Court grant affirmative relief pursuant to Federal Rule of Civil Procedure 56(f), including granting summary judgment in favor of Plaintiffs and prohibiting Defendant Temper Fabricators, LLC ("Temper") from asserting any defense under the Illinois Workers' Compensation Act at the upcoming jury trial. Temper filed a response brief on February 3, 2015 (Doc. 72). For the reasons set forth below, Plaintiffs' Request is denied.

## Factual and Procedural Background

On May 12, 2011, Plaintiff John Barrow was injured while working in the Peabody Energy Willow Lake Mine ("Willow Lake Mine") located in Equality, Illinois. Barrow was employed by Big Ridge, Inc., a subsidiary and affiliate of Peabody Investment Corporation ("Peabody"). On that day, Barrow allegedly tripped over

hydraulic hoses that had been transferred by Johnny Whitfield, Sr. and Ralph Vandiver, both of whom were Temper employees.

Barrow pursued a workers' compensation claim against Peabody for his injuries and reached a settlement on June 17, 2013. On June 13, 2013, Plaintiffs filed this action seeking damages from Temper as a result of the May 12, 2011, incident. In the Amended Complaint (Doc. 40, Ex. 1), Plaintiffs make claims for: (1) negligence related to the placement of the hydraulic hoses Barrow tripped over, (2) breach of contract under the Master Performance Agreement between Peabody and Temper, and (3) loss of consortium on behalf of Kimberlee Barrow.

On December 15, 2014, Temper filed two motions for summary judgment (Docs. 48 and 51). In its Motion for Summary Judgment as to Count II, Breach of Contract (Doc. 48), Temper sought dismissal of Plaintiffs' breach of contract claim asserting that the Master Performance Agreement between Temper and Peabody did not intend to provide Barrow, as a third party beneficiary, a direct benefit or a right to sue. In Temper's Motion for Summary Judgment as to All Claims (Doc. 51), Temper asserted that it was a loaning employer under the Illinois Workers' Compensation Act and was entitled to immunity from suit by operation of the Act's exclusivity provisions.

The Motion for Summary Judgment as to Count II, Breach of Contract, was granted on the record during the January 26, 2015, hearing (Doc. 69), and the Court subsequently issued an Order (Doc. 73). The Motion for Summary Judgment as to All Claims (Doc. 51) was denied on the record during the January 26 hearing (Doc. 69). Following the hearing, Plaintiffs filed their Request for Relief Pursuant to Rule 56(f)

Regarding Defendant's Waiver of All Immunity Under the Illinois Workers' Compensation Statute (Doc. 70). On February 3, 2015, Temper filed a Response (Doc. 72).

### **Legal Standard for a Rule 56(f) Judgment Independent of the Motion**

When there are no issues of material fact in dispute, a district judge may grant summary judgment in favor of the non-moving party or may grant summary judgment even though no party has moved for summary judgment. *See Hunger v. Leininger,* 15 F.3d 664, 669 (7th Cir. 1994). The court may enter summary judgment *sua sponte,* as long as the losing party is given notice and an opportunity to come forward with its evidence. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Goldstein v. Fid. and Guar. Ins. Underwriters, Inc.,* 86 F.3d 749, 750 (7th Cir. 1996). If the court entertains the prospect of entering summary judgment against the unsuccessful movant, then the court must grant the unsuccessful movant all of the favorable factual inferences that it has just given to the movant's opponent. *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engrs., Local Union 150, AFL–CIO,* 335 F.3d 643, 647–48 (7th Cir. 2003). Only if the court can say that no finder of fact could reasonably rule in the unsuccessful movant's favor may the court properly enter summary judgment against that movant. *E.g., O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011).

### **Analysis**

A. *Waiver of Immunity Under the Illinois Workers' Compensation Act*

Plaintiffs contend that Temper expressly waived all immunity potentially available to it under the Illinois Workers' Compensation Act ("IWCA") in the Master

Performance Agreement ("MPA"). Specifically, Plaintiffs argue that through the waiver in the MPA, Temper agreed to be bound to compensate and hold harmless Peabody's employees, such as Barrow, in instances of negligence by Temper employees (*See* Doc. 64).

Pursuant to the statutory scheme implemented by the IWCA, the employee relinquishes his common law rights to sue his employer in tort, but recovery for injuries arising out of and in the course of his employment become automatic without regard to any fault on his part. *McNamee v. Federated Equip. & Supply Co.*, 181 Ill. 2d 415, 421, 692 N.E.2d 1157, 1160 (1998). The employer gives up the right to plead the numerous common law defenses to the employee's claim in exchange for limited liability. *Id*. "This trade-off between employer and employee promoted the fundamental purpose of the Act, which was to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Id., quoting Mitsuuchi v. City of Chicago*, 125 Ill.2d 489, 494, 532 N.E.2d 830 (1988).

An injured employee also may have a cause of action against a third-party to the employment relationship whose negligence allegedly caused or contributed to the employee's injuries. *See Braye v. Archer–Daniels–Midland Co.*, 175 Ill.2d 201, 207, 676 N.E.2d 1295, 1300 (1997). The IWCA does not limit the employee's recovery from a third party. *Id*. Although the employee is barred from bringing a civil suit directly against his employer, the third-party non-employer may file a third-party suit against the employer for contribution toward the employee's damages. *Id.; see also* 740 ILCS 100/1 *et seq.*

The concept of contribution contemplates that each party whose fault contributed to an injury should pay its *pro rata* share of the common liability. 740 ILCS 100/2, 3. In *Kotecki v. Cyclops Welding Corp.*, the Illinois Supreme Court established the concept of limiting a third-party employer defendant's liability in contribution claims to its statutory liability under the IWCA. *Kotecki v. Cyclops Welding Corp.,* 146 Ill.2d 155, 164–65, 585 N.E.2d 1023, 1027-28 (1991). This allowed non-employer defendants to recover limited contribution from the employer and also extended the limited liability protection of the IWCA to contribution claims. *Id*. The "cap" afforded employers in *Kotecki* is not an automatic defense. Rather, it is an affirmative defense that must be pleaded in answer and proven. *Id.*

An employer may contractually waive the cap on its contribution liability, resulting in the employer becoming liable for its full *pro rata* share of contribution. *Braye,* 175 Ill.2d at 210, 676 N.E.2d at 1300; *Estate of Willis v. Kiferbaum Const. Corp.,* 357 Ill.App.3d 1002, 1005-06, 830 N.E.2d 636, 641 (2005). "In essence, a party who agrees to waive *Kotecki* as an affirmative defense voluntarily assumes contribution liability in excess of the limitations provided under the Compensation Act." *Id*.

Plaintiffs point to paragraph 9 of the MPA as evidence that Temper intended to waive all protections that could be afforded to it as to Peabody or Peabody's employees pursuant to the MPA. According to Plaintiffs, this waiver prohibits Temper from asserting any defense based on the IWCA at trial. Paragraph 9, titled Indemnity, provides:

> Contractor shall indemnify and hold harmless Owner, its parents, subsidiaries, affiliates and related companies, and their officers, directors,

>  agents, representatives and employees, and each of their respective successors and assigns (the "Indemnified Parties") against any and all suits, losses, damages, liabilities, costs and expenses including reasonable attorneys' fees and other costs of defending any action) ("Losses") which such parties may sustain or incur (i) in connection with a breach of any representation, warranty, or undertaking made by Contractor in this Contract, or (ii) in connection with the performance, design, development, sale, use, or delivery of the goods or services (as applicable), whether the claim be based upon a theory of breach of contract or warranty, negligence, strict liability, other tort, infringement or any other legal theory, except to the extent caused by the negligence of the Owner or other Indemnified Party, or (iii) as a result of any suit, claim or demand under any environmental, transportation, health, safety, or other laws, rules, regulations or requirements caused by or resulting from the goods or services or any acts or omissions of Contractor in the performance of this Contract. If Contractor's performance requires Contractor, its employees, agents or representatives to perform services on the property of Owner or its agents, Contractor will indemnify and hold harmless the Indemnified Party against all Losses for injury or damage to person or property arising out of such performance, except to the extent caused by the Owner or its agent. Contractor agrees that it will, when requested and given reasonable notice of the pendency of any such suits, claims or demands, assume the defense of the indemnified Party against any such suits, claims or demand. Additionally, Contractor expressly and specifically waives all immunity that may be afforded to Contractor under the workers' compensation laws of any state or jurisdiction to the extent permitted by law.

(*See* Doc. 53-1). Plaintiffs particularly emphasize the last sentence of paragraph 9 as direct evidence of Temper's waiver of rights under the IWCA. But the Court finds Plaintiffs' analysis regarding the Indemnity provision is misguided.

The waiver anticipated in paragraph 9 of the MPA is not a waiver of the affirmative defenses available to Temper in this lawsuit. Rather, the language in paragraph 9 is Temper's acquiescence to unlimited liability by waiving the *Kotecki* limitation as to contribution claims in any potential third-party lawsuit brought by Peabody. *See Braye*, 175 Ill.2d at 210, 676 N.E.2d 1295; *Willis,* 357 Ill.App.3d at 1007, 830

N.E.2d at 642 (clause stating that indemnification obligation "shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the subcontractor under workers' compensation act" constituted a waiver of *Kotecki* cap as to contribution claim).

In *Braye*, cited by Plaintiffs in support of their waiver argument, an employee sued his employer for injuries he sustained while working, and the employer filed a third-party complaint seeking contribution from the owner of the premises where the employee had been working. *Braye*, 175 Ill.2d at 203-04, 676 N.E.2d at 1297. The purchase agreement between the employer and the third party had a provision in which the employer waived its *Kotecki* limit. *Id.* Likewise, the waiver provision in paragraph 9 would be triggered by Peabody in a third-party contribution action against Temper. Based on the waiver language in paragraph 9, Peabody would be able to seek unlimited contribution asserting that Temper waived its *Kotecki* cap limits. The Court finds Paragraph 9 is inapplicable in the instant case.

B. *The Borrowed Servant Affirmative Defense*

Plaintiffs also request the Court affirmatively rule that Temper's employees do not qualify as "borrowed employees" of Peabody. The IWCA provides for the scenario where an employee might have more than one employer. When a covered employer "borrows" an employee from a covered "loaning" employer, and the employee is injured, both employers are responsible for providing workers' compensation benefits. *Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012), *citing* 820 ILCS 305/1(a)(4). Both employers are thus jointly and severally liable to the injured employee. *Id*. Further, both

employers enjoy immunity from tort liability under the IWCA. *Id.; see also Belluomini v. United States*, 64 F.3d 299, 302 (7th Cir. 1995); *Luna v. United States*, 454 F.3d 631, 634 (7th Cir. 2006).

The Seventh Circuit has articulated two separate tests for identifying a borrowed employment relationship for purposes of the IWCA. The first test, based on common law principles of the borrowed servant doctrine and *respondeat superior*, focuses on the degree of control exercised by the putative borrowing employer. *Couch*, 694 F.3d at 857. In applying the common law control test, Illinois courts consider "the character of the supervision of the work done, the manner of direction of the employee, the right to discharge, the manner of hiring, and the mode of payment." *Chaney v. Yetter Mfg. Co.*, 315 Ill.App.3d 823, 248 Ill.Dec. 737, 734 N.E.2d 1028, 1031 (2000).

The second test incorporates language from the IWCA. Under the statutory test, "(1) a substantial portion of the alleged loaning employer's business must consist of furnishing employees to do the work of other employers; (2) the loaning employer must pay the employee's wages even though that employee is working for another employer; and (3) the borrowing employer must be operating under the [IWCA]." *Belluomini,* 64 F.3d at 302.

Whether an injured worker is a borrowed employee is "generally a question of fact," but "when the unrebutted evidence is capable of only one interpretation," a court "must make the determination as a matter of law." *Couch*, 694 F.3d at 857, *citing A.J. Johnson Paving Co. v. Indus. Comm'n,* 82 Ill.2d 341, 45 Ill.Dec. 126, 412 N.E.2d 477, 481 (1980); *Kawaguchi v. Gainer,* 361 Ill.App.3d 229, 296 Ill.Dec. 401, 835 N.E.2d 435, 445

(2005). The Court has already denied Temper's Motion for Summary Judgment regarding this issue. Although they did not file a motion for summary judgment, Plaintiffs now ask, pursuant to Federal Rule of Civil Procedure 56(f), that the Court prohibit Temper from asserting a borrowed servant defense at trial. On the basis of the current record before the Court, however, neither party has carried out its burden of showing entitlement to judgment as a matter of law on the borrowed servant issue. As stated at the January 26 hearing, questions of fact preclude summary judgment on this issue. Accordingly, Plaintiffs' Rule 56(f) request must be denied.

## Conclusion

For the reasons set forth above, Plaintiffs' "Request for Relief Pursuant to Rule 56(f)" (Doc. 70) is **DENIED**. The parties shall work together to craft appropriate jury instructions on the borrowed employee issue.

**IT IS SO ORDERED.**

**DATED: April 13, 2015**

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**